IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LADATECH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-627-SLR |
| | ) | |
| ILLUMINA, INC. and SOLEXA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW OF NONINFRINGEMENT

*Of Counsel:*

Jeffrey N. Costakos
Kimberly K. Dodd
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Tel:  (414) 271-2400
jcostakos@foley.com
kdodd@foley.com

Ronald M. Wawrzyn
Wawrzyn LLC
233 S. Wacker Drive
Willis Tower, 84th Floor
Chicago, IL  60606
(312) 283-8330

Steven J. Balick (I.D. #2114)
Lauren E. Maguire (I.D. #4261)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel:  (302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

Dated:  February 27, 2012

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................1

I.      LEGAL STANDARD ..................................................................................................1

II.     DIRECT INFRINGEMENT ..........................................................................................1

      A.     Sample Prep Kits.............................................................................................1

             1.     Use of Illumina's sample prep kits cannot infringe because the forked adapter is not a "double-stand linker" under the doctrine of equivalents ..............................................................1

             2.     Use of Illumina's sample prep kits cannot infringe because the forked adapter is not a "double-stand linker" under the doctrine of equivalents ..............................................................5

             3.     There is a complete failure of proof that a single user performed sample prep on a "mixture ...........................................................8

             4.     There is a complete failure of proof with respect to Illumina's "Digital Gene Expression" Sample Prep Kits ..............................................8

             5.     There is a complete failure of proof with respect to Illumina's "PCR-free" protocol ..............................................................9

             6.     There is a complete failure of proof that Illumina's FastTrack Services group used the accused kits ...........................................9

             7.     Certain sample prep kits cannot infringe dependent claim 13 ...................10

             8.     Certain sample prep kits cannot infringe dependent claim 14 ...................10

             9.     There can be no direct infringement of dependent claim 15 based on the Court's Markman Order ......................................................10

      B.     Cluster Generation Products .........................................................................12

             1.   There is no evidence of a single act of direct infringement using the cluster generation products .................................................12

2.   The cluster generation products cannot infringe even when combined with an infringing sample prep kit ...................................................................14

a.      Cluster generation is a separate method from sample prep ............14

b.      The cluster generation steps are not performed on a mixture.........15

c.      This evidence does not satisfy the Court's claim construction of "mixture" as a matter of law .........................................................17

d.      Cluster generation is not performed on "the fragments" of the mixture because the original fragments are washed away........17

III.   THERE IS NO EVIDENCE OF INDIRECT INFRINGEMENT......................................18

A.   There is No Evidence of Intent to Cause Infringement, Which Is a Prerequisite for Inducement and Contributory Infringement................................18

B.   LadaTech Failed to Prove the Absence of Substantial Noninfringing Uses, Which Is a Prerequisite Under § 271 (c)................................................................19

1.   LadaTech dropped its assertion of contributory infringement with respect to the cluster generation products.........................................20

2.   Illumina's PCR-free protocol has substantial, noninfringing uses ............20

3.   The sample prep kits could be used on samples that do not have a "mixture of different sequence duplex DNA fragments" .........................20

CONCLUSION....................................................................................................................20

## INTRODUCTION

Defendants Illumina, Inc. and Solexa, Inc. (collectively "Illumina") hereby move for judgment as a matter of law of noninfringement.

## ARGUMENT

## I.      LEGAL STANDARD

The Court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "[T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## II.     DIRECT INFRINGEMENT

It is LadaTech's burden of proving infringement by a preponderance of the evidence. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758 (Fed. Cir. 1984). To meet this burden, LadaTech must show "without exception, [that the] accused product contains each limitation or its equivalent." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996). The absence of even one claim element precludes literal infringement. *Kahn v. GMC*, 135 F.3d 1472, 1477 (Fed. Cir. 1998).

### A.      Sample Prep Kits

#### 1.      Use of Illumina's sample prep kits cannot literally infringe because there is no "double-strand linker"

The Illumina method cannot perform the claimed method because the accused sample prep products lack a "double-strand linker." Instead, the accused products have a "forked adapter" that is not double-stranded in nature:



(*See, e.g.*, DTX-054 at 36.)

The Court construed "double-strand linker" to mean "a linker with two strands that are sufficiently hybridized to maintain the linker's double-strand nature."  (D.I. 158, 1/24/12 Memorandum Order at 3.)  In a February 14 order, the Court clarified that LadaTech must prove that the **structure** of the forked adapter is double-stranded, and may not rely on its **function** in doing so:

> In the court's view, the **structure** of the linker (or adapter) is independent of its **function**.  The court's constructions provide the jury guidance as to both.  It is insufficient to argue (as plaintiff implies) that, so long as the linker fulfills its intended purpose (i.e., is "of sufficient length to bind at least one primer"), the construction is met.  (D. I. 164 at 2)  Plaintiff must ultimately prove that Illumina's forked adapters are double-stranded in nature, and that they bind at least one primer.
>
> The court understands defendants' position to be that, as per plaintiff's expert (Dr. Struhl), a forked adapter does not fit into either the single-stranded or double-stranded category; it is unique. (D.I. 159 at 21)  Notwithstanding, defendants may argue that the percentage of paired bases in Illumina's forked adapters (38%, 35%, 42%, 21%, and 19% of the total bases, respectively), is not "sufficiently hybridized" such as to render the Y-shaped structures double-stranded in nature, without expanding the court's construction, as plaintiff suggests.  (*Id.*)

(D.I. 170, 2/14/12 Memorandum Order at 3, n.3 (emphasis in the original).)

At trial, LadaTech proceeded contrary to the Court's direction by arguing that the Illumina forked adapters are "double-strand linkers" because of their **function**, not their

**structure**.  (2/21/12 Struhl Trial Tr. 200:24-205:1.)  Through witness examinations, LadaTech

made two arguments about the **function** of Illumina's forked adapters:

> 1.   The double-stranded portion of the forked adapters (the "handle") is **functionally** required to keep the two strands bound together (*see, e.g., id.* 202:11-203:3); and
>
> 2.   The double-stranded handle is **functionally** required to allow the adapters to bind to the sample DNA fragments using ligase (*see, e.g., id.* 203:8-204:25).

However, these **functional** requirements do not prove that the forked adapters have a double-

strand **structure**.[1]  (D.I. 170, 2/14/12 Memorandum Order at 3, n.3.)

LadaTech failed to put on any evidence that the **structure** of the forked adapters is

double-stranded in "nature" as the Court construed.  Instead, LadaTech's infringement expert,

Dr. Struhl, repeatedly agreed that the **structure** of the forked adapter is not double-stranded in

nature.  He testified on numerous occasions that the forked adapters have neither a double-

stranded nor single-stranded **structure**:

> Q.   Isn't it true, Dr. Struhl, that in 1988, people of skill in the art would not have called this structure either single-stranded or double-stranded?
>
> A.   They would say there was a double-stranded part and a single-stranded part, which is kind of obvious.
>
> Q.   So isn't it true that they would not call this either single-stranded or double-stranded?
>
> A.   Yes.  Most molecules in the real world are neither single-stranded or double-stranded.

---

[1] Under LadaTech's perspective, an adapter with even hundreds of bases of non-complementarity would be double-stranded so long as there are a few bases that are complementary.  (*See, e.g.*, 2/21/12 Struhl Trial Tr. 204:2-7 ("Q.  Now, does it matter what percentage of the total bases that make up any of those adapters are double-stranded and what percentage of them are single stranded?  A.  It's completely irrelevant because the ligase doesn't even notice that.  That is what we're talking about.  And the molecule stays together no matter what is on there.").

(2/22/12 Struhl Trial Tr. 280:17-25.)

The Illumina forked adapters cannot be double-stranded because they are mostly single-stranded:



(*See* 2/22/12 Schroth Trial Tr. 455:9-457:3.)  The forked adapter for the single read sample prep

kits has single-stranded arms of 20 and 21 bases in length, with only 12 base pairs that are

double-stranded.  (*Id.* 456:22-23.)  The forked adapter for the paired end sample prep kit has

single-stranded arms of 19 bases in length each, with only 13 base pairs that are double-stranded.

(*Id.* 456:23-25.)  The forked adapter for the TruSeq sample prep kit has single stranded arms of

45 and 51 bases in length, with only 12 base pairs that are double-stranded.  (*Id.* 457:1-3.)  As

Dr. Silverstein testified, these structures are not "double-strand linkers."  (2/23/12 Silverstein

Trial Tr. 564:22-565:11.)

The purpose of the fork is important to the function of the Illumina system (and not a

mere design choice) because the forked arms serve as the priming sites for Illumina's P5 and P7

adapters.  (2/21/12 Struhl Trial Tr. 190:19-22 ("But the very important aspect on the adapter is

the so-called forked part, which has P5 and P7 here. And P5 and P7 are the sequences that are

the sequences recognized by the primer.").)

>     **2.      Use of Illumina's sample prep kits cannot infringe because the forked
>             adapter is not a "double-strand linker" under the doctrine of
>             equivalents**

LadaTech has asserted that Illumina's "forked adapters" meet the "double stranded

linker" limitation under the doctrine of equivalents.  This argument is barred as a matter of law.

Infringement under the "doctrine of equivalents" occurs only in limited circumstances

where there are "insubstantial differences" between the patent claims and the accused product.

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997).  However, the

doctrine of equivalents "is not a license to ignore or 'erase . . . structural and functional

limitations of the claim,' limitations 'on which the public is entitled to rely in avoiding

infringement.'"  *Athletic Alternatives*, 73 F.3d at 1582 (internal citations omitted).

Rather, the doctrine of equivalents is narrowly circumscribed to preserve the notice-

giving function of a patentee's claims:

> Given a choice of imposing the higher costs of careful prosecution
> on patentees, or imposing the costs of foreclosed business activity
> on the public at large, this court believes the costs are properly
> imposed on the group best positioned to determine whether or not
> a particular invention warrants investment at a higher level, that is,
> the patentees.

*Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997) (citations

omitted).

Importantly, according to the Supreme Court, infringement cannot be found under the

doctrine of equivalents under a theory that entirely *vitiates* a particular claim element.  *Warner-

Jenkinson,* 520 U.S. at  40, n.8.  The Federal Circuit has aggressively enforced the Supreme

Court's mandate that claim elements cannot be ignored or vitiated.  *E.g.*, *Lockheed Martin Corp.*

*v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) (affirming summary judgment of

non-infringement because "[i]n the absence of an element that performs the properly construed

functions, a finding of infringement under the doctrine of equivalents would entirely vitiate the limitations of limitation [b]"); *Fin Control Sys. Pty., Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1320 (Fed. Cir. 2001) ("no infringement under the doctrine of equivalents because applying the doctrine to find infringement in this case would improperly read the 'lateral' and 'side' limitations out of claim 13."); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) ("Such a result is impermissible under the all-elements rule of *Warner-Jenkinson* because it would write the 'generally conical outer surface' limitation out of the claims."); *Cooper Cameron Corp. v. Kvaerner Oil Field Prods., Inc*., 291 F.3d 1317, 1321-22 (Fed. Cir. 2002) (a part claimed as "above" two plugs is substantially different from (and not an equivalent to) the part claimed as "between the two plugs"); *Sage Prods*, 126 F.3d at 1425-26  ("This court will not effectively remove such a limitation under a doctrine deemed to prevent 'fraud on a patent.').

Expanding the term "double strand" to cover structures that are not substantially double stranded would completely vitiate that claim element.  Claim 12 itself distinguishes between fully double stranded structures and partially double stranded structures.  Claim 12 calls its linkers "double stranded."  But the strand which is hybridized to a primer is referred to in the claim as a "strand/primer complex" – *even though it is partially double stranded*.

More than that, the claim says that the strand/primer complex is "converted" to "double strand fragments."  If the term "double strand" could be broadened to cover structures that are only partially double stranded, this distinction in the claims would be completely removed.  The strand/primer complex – which is itself only partially double stranded – could then be converted to a partially double stranded fragment.  Such a result would eviscerate the distinction in the claims between double stranded structures and partially double stranded structures, like the strand/primer complex.

In addition to this legal bar, LadaTech's position also fails, as a matter of law, because no reasonable jury could find the Illumina forked adapter to be equivalent to a molecule that is double stranded in nature.  Illumina has obtained a patent on its forked adapter method.  (DTX-135.)  This patent was granted by the USPTO even though the Reyes '023 patent was considered by the examiner.  (*See* DTX-135 frontispiece.)  "The non-obviousness of the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial."  *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996); *see also Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 954 (Fed. Cir. 1993) ("In support of our conclusion, we note that the Patent & Trademark Office (PTO) granted to Dresser a patent (U.S. Patent No. 4,430,439) covering the Adtech product with knowledge of the '953 patent, which is listed as art of record. Thus, the PTO must have considered the accused product to be nonobvious with respect to the patented composition.  Accordingly, the issuance of that patent is relevant to the equivalence issue.")  The issuance of the Illumina forked adapter patent in the face of the Reyes '023 patent is strong evidence of the non-equivalence of the Illumina forked adapter.

The evidence at trial showed that the Illumina method would not work if it employed a double stranded linker like that in the '023 patent.  The Illumina patent requires two primers, which means that the sequences added to the DNA fragments must be different.  If the Illumina linker were double stranded in nature, it would result in a single primer, which could then not be amplified and sequenced on the Illumina instruments.  Because the Illumina forked adapters would not work if they were double stranded in nature, the forked adapter cannot be equivalent to a double stranded linker.

In sum, the accused Illumina products lack a double stranded linker, both literally and under the doctrine of equivalents.  The Court should enter judgment of non-infringement as a matter of law.

### 3. There is a complete failure of proof that a single user performed sample prep on a "mixture"

LadaTech did not put in any evidence that even a single user has performed the Illumina sample prep method on a "mixture."  The Court construed this term and the preamble as follows: "The preamble is limiting, in that each of the steps of the method claim must be performed on fragments in a mixture."  (D.I. 158, 1/24/12 Memorandum Opinion at 1.)  As we know from the Saiki article, amplification is sometimes done on single isolates, rather than a mixture of fragments.  Without evidence regarding what Illumina's customers have actually done, the Court should enter judgment of noninfringement.

### 4. There is a complete failure of proof with respect to Illumina's "Digital Gene Expression" Sample Prep Kits

LadaTech failed to put in any evidence pertaining to a line of accused sample prep kits called the Digital Gene Expression ("DGE") kits.  (*See generally* 2/21/12 Struhl Trial Tr. 145:9-248:18; 2/22/12 Struhl Trial Tr. 270:5-347:9.)  LadaTech did not present any evidence regarding how the DGE kits work or whether they infringe.  (*Id.*; *see also* LadaTech's Exhibit List (DGE protocols not admitted, PTX 084-085, 090, and 097.)

This failure is not a mere technicality.  Unlike the other Illumina sample prep kits that were discussed at trial, the DGE kits do not have a forked adapter and do not work using the same protocol.  Because the DGE kits are drastically different than the other sample prep kits, LadaTech cannot merely lump them in with the sample prep kits that were discussed at trial.

Accordingly, the Court should enter judgment that Illumina does not infringe the asserted claims of the '023 patent (either directly or indirectly) through its sale or use of the DGE kits.

**5.** **There is a complete failure of proof with respect to Illumina's "PCR-free" protocol**

As with the DGE kits, LadaTech failed to put in any evidence regarding use of Illumina's

"PCR-free" method.  Dr. Struhl explained that Illumina recently started selling a line of sample

prep kits called the TruSeq kits.  (2/21/12 Struhl Trial Tr. 178:8-18.)  The TruSeq protocol

indicates that PCR is optional.  (*See, e.g.*, PTX 157, TruSeq sample prep guide at 12 ("The

libraries generated do not require PCR amplification to enable cluster generation"); 2/22/12

Pisharody Trial Tr. 407:16-408:14; 2/22/12 Schroth Trial Tr. 452:22-454:14.)  At one point

during cross examination, Mr. Pisharody mentioned the PCR-free method and counsel for

LadaTech instructed him to focus on the other methods.  (2/22/12 Pisharody Trial Tr. 409:7-10.)

At the charge conference, LadaTech conceded that the PCR-free method does not infringe

because there is no amplification step:

> MS. NOREIKA: Yes.  And here is an example, your Honor.  I got
> one.  They put on evidence from Mr. Schroth who said -- it was
> Mr. Schroth or Mr. Pisharody who was arguing to me, saying oh,
> no, no, no, it was sample prep which is PCR free, which means
> you don't do an amplification step, you just attach the adapter and
> go to the cluster stage.  So now we have a situation where we
> attach an adapter.  You could not infringe the sample prep claim
> because you are not doing the other steps.  You have just done the
> attachment of the adapter and you go straight through to cluster
> generation.

(2/24/12 Charge Conf. Tr. 897:22-898:8.)

Based on this admission and lack of proof, the Court should enter judgment that there is

no direct infringement by anyone (Illumina or its customers) who uses the PCR-free method.

**6.** **There is a complete failure of proof that Illumina's FastTrack Services group used the accused kits**

There is no evidence in the record that Illumina's internal service lab, called "FastTrack,"

has used each of the asserted sample prep kits.  Illumina's witnesses, Gary Schroth and Suresh

Pisharody, testified that the FastTrack lab might generally uses Illumina reagents, but neither gentleman testified regarding which reagents the lab actually uses.  (2/22/12 Schroth Trial Tr. 359:17-360:11; 2/22/12 Pisharody Trial Tr. 375:19-376:18.)  Nor did LadaTech offer such proof. The Court should enter judgment that Illumina does not directly infringe the asserted claims, such as in its FastTrack service lab.

### 7.      Certain sample prep kits cannot infringe dependent claim 13

Claim 13 requires that the DNA fragments be "genomic fragments."  Some of the accused sample prep kits are not used with "genomic fragments," such as the TruSeq RNA Sample Prep Kits and the mRNA-Seq Sample Prep Kits.  LadaTech did not present any evidence to the contrary at trial.  The Court should enter judgment of noninfringement of claim 13 for these kits.

### 8.      Certain sample prep kits cannot infringe dependent claim 14

Claim 14 require that the DNA fragments be "produced by converting messenger RNA species to double-strand cDNA fragments" before performing the patented steps.  Most of the accused kits are not used with RNA samples, such as the Genomic DNA Sample Prep Kits, Single-Read Sequencing Prep Kits, Paired End Sample Prep Kits, Mate Pair Sample Prep Kits, Multiplexed Paired-End Sequencing Kits, TruSeq DNA Sample Prep Kits, and the ChIP-Seq Sample Prep Kits.  LadaTech did not present any evidence to the contrary at trial.  The Court should enter judgment of noninfringement of claim 14 for these kits.

### 9.      There can be no direct infringement of dependent claim 15 based on the Court's Markman Order

Illumina cannot infringe claim 15 because its method uses two primers.  (*See, e.g.*, 189:25-194:17; 218:18-219:9; 285:19-24.)  The Court specifically held in its Markman order that claim 15 requires the use of a single primer:  "There is no clear and unambiguous language in

either the prosecution history or the specification that limits claim 12 to the use of one primer,

especially in light of dependent claim 15 which requires that the linkers be the same (and, thus,

the primer be the same)."  (D.I. 158, 1/24/12 Memorandum Order at 4.)

The Court's holding stems from LadaTech's argument made at the Markman hearing

(shown in LadaTech's slide 37 below), which states that two primers are used when the linkers

are different, but only one primer is used when the linkers are the same:



(Ex. 1 hereto at slide 37.)

At the charge conference, the Court addressed whether to change the construction of

claim 15 and ultimately decided that the construction would stay the same.  (2/24/12 Conf. Tr.

926:21-927:2.)  Having made this argument to win this issue at the Markman, LadaTech should

not be permitted to take a different position at trial.[2]   The Court should enter judgment of

noninfringement of claim 15 based on its Markman decision.

### B.   Cluster Generation Products

#### 1.   There is no evidence of a single act of direct infringement using the cluster generation products

LadaTech's proof with respect to the cluster generation products is even more

complicated because there is a divided infringement problem.  It is undisputed that the cluster

generation products, by themselves, cannot infringe the asserted claims.[3]   The cluster generation

products do not perform the first "attaching" step because the forked adapters (the alleged

double-strand linkers) are attached during sample preparation.  Accordingly, the cluster

generation products cannot infringe the asserted claims unless the user first prepares the

sample(s) with an infringing sample prep kit.

"It is well settled that direct infringement requires a single party to perform every step of

a claimed method."  *Akamai Technologies, Inc. v. Limelight Networks*, 629 F. 3d 1311, 1318

(Fed. Cir. 2010) (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378-79 (Fed.

Cir. 2007) and *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17, (1997)).  There

can be no infringement of a method claim "unless one party exercises 'control or direction' over

the entire process such that every step is attributable to the controlling party.'"  *Id.* (citations

omitted).

---

[2] As explained in Illumina's filing of February 24, 2012, the Court's statement about claim 15 is accurate in the context of the '023 patent.  (D.I. 178.)

[3] *See* Struhl Trial Tr. 238:11-22; *see also* D.I. 159, 1/24/12 Memorandum Opinion at 25 ("The parties do not appear to dispute that Illumina's cluster generation products cannot infringe alone, because these products perform PCR (amplification), and do not attach double-stranded linkers.  That is, the "attaching" step of claim 12 (in full, "attaching a double-strand linker to the fragments, by ligating the linkers to both strands of the fragments, at both fragment ends") must be performed by a sample prep kit.").

With this backdrop, LadaTech must prove at least one act of direct infringement for each accused product under both of these scenarios to proceed under these theories in the next phase:

1.  Party #1 prepares a sample using an infringing sample prep kit and also performs cluster generation on the sample (i.e., Party #1 performs both sample prep and cluster generation);

    AND

2.  Party #1 prepares a sample using an infringing sample prep kit, sends the sample to Party #2 who performs cluster generation on the sample, AND Party #1 exercises "control or direction" over the entire process.

There is no evidence of either scenario in the record. There is no evidence that Illumina itself performs cluster generation in its FastTrack lab. Although Schroth and Pisharody testified briefly about the FastTrack services, there is no evidence in the record that the FastTrack lab performs cluster generation. (2/22/12 Schroth Trial Tr. 359:17-360:11; 2/22/12 Pisharody Trial Tr. 375:19-376:18.)

With respect to Illumina's customers, multiple witnesses testified that it is common for researchers to perform their own sample prep, but then ship the samples to a different party (such as a core lab)[4] who performs cluster generation. (*See, e.g.*, 2/21/12 Struhl Trial Tr. 221:9-222:19.) Dr. Struhl even testified that "[m]ost labs don't have their own cluster generation equipment" including his own lab:

Q.   And did you hear Illumina's counsel ask Dr. Lovett if -- I think I asked Dr. Lovett if he did his own cluster generation.

A.   I heard that. Yes.

Q.   And he said he use a core lab?

A.   Right.

---

[4] A core lab is a large laboratory that performs laboratory services for other labs and charges for its services.

> Q.    Do you use a core lab?
>
> A.    Well, it depends. We certainly don't do it in my own lab,
>       because in order to do it, it's pretty expensive equipment.
>       Most labs don't have their own. So some of the time we
>       send it to a core lab.  In fact, we use multiple cores.  It's not
>       just one core lab.

(2/21/12 Struhl Trial Tr. 221:9-20.)  Dr. Struhl testified that his lab performs sample prep at his

laboratory at Harvard Medical School in Massachusetts, but then ships the samples to core labs

at either Stanford or the University of California, Davis.  (*Id.* 221:21-222:2.)

There is no evidence in the record that a single party (Party #1 in the above scenario)

performed both sample preparation and cluster generation using each of the accused products.

Nor is there any evidence in the record that a single party (again, Party #1 in the above scenario)

performed sample prep and then exercised the requisite "control or direction" over a second

party (Party #2) who performed cluster generation.

The stipulation does not cure this defect because there is nothing in the stipulation about

a customer who performs both sample prep or cluster generation.  (2/22/12 Reading of

Stipulation in Tr. 273:2-16.)  Nor does the stipulation address the issue of "control or direction."

(*Id.*)

The Court should enter judgment as a matter of law of non-infringement with respect to

<u>all</u> of the cluster generation products due to this failure of proof.

> **2.    The cluster generation products cannot infringe even when combined
>        with an infringing sample prep kit**

>> **a.    Cluster generation is a separate method from sample prep**

Numerous witnesses testified that the sample prep method is completely separate from

the cluster generation method.  (*See, e.g.*, 2/21/12 Lovett Trial Tr. 132:12-134:13; 2/21/12 Struhl

Trial Tr. 221:9-222:19.)  As discussed above, Dr. Struhl testified that the two processes are

typically done by two completely different parties (such as his lab at Harvard Medical School and core labs at Stanford and the University of California, Davis). (2/21/12 Struhl Trial Tr. 221:9-222:2.) The two processes are often also performed at completely different times. (*See, e.g.*, 2/21/12 Lovett Trial Tr. 132:12-134:13; 2/21/12 Struhl Trial Tr. 221:9-222:19.) Given this separation, both processes cannot fall within the same method set forth in the asserted claims.

>    **b.     The cluster generation steps are not performed on a mixture**

The cluster generation products do not perform the steps of the asserted claims on a "mixture." The individual fragments are spatially isolated, and the DNA clusters are bound (or "tethered") to the surface of the flow cell in separate groupings (2/23/12 Silverstein Trial Tr. 593:17-594:8; *id.* 600:7-11):



(LadaTech Demonstrative used with Dr. Struhl.)

Dr. Struhl testified that the clusters are "spatially isolated":

> Q.    Now, in the cluster generation, the fragments are spatially
>       isolated from each other.  Isn't that right?
>
> A.    The clusters are individual clusters, are spatially isolated
>       from other individual clusters, that's true.

(2/22/12 Struhl Trial Tr. 312:9-12.)  This spatial separation is necessary to image the clusters

during the sequencing process that happens after cluster generation:

> Q.    After you do the cluster generation process the clusters are
>       also spatially isolated?
>
> A.    I would hope so.  Otherwise, you won't be able to see
> them.
>
> Q.    It is important they be separated from each other so you can
>       see them?
>
> A.    Right.

(*Id.* 312:25-313:6.)  The tethering of the fragments to the floor of the flow cell – rather than

permitting them to float freely in solution – is also necessary to perform Illumina's sequencing

process.  (2/23/12 Silverstein Trial Tr. 604:1-18; *id.* 741:21-742:9.)

LadaTech attempted to prove the "mixture" element by introducing evidence that all of

the reagents are injected onto the flow cell at once and all of the cluster reactions take place at

once:

> Q.    Does it matter that the clusters are formed as we saw it in
>       clusters in different places on the close-up [sic]?
>
> A.    No, because everything is being performed.  Even though
>       the clusters are themselves separate, which is actually
>       relevant for sequencing; as far as amplification is
>       concerned, it's all done at the same time.
>
>       So it's a mixture. All the things, all the reactions that you
>       are talking about -- I said this before, I'll say it again.
>       Everything throughout the entire process is always done on
>       everything.  You never do one at a time.  It's not this
>       molecule, then that molecule.  This one may be here, this

one might be there, but everything is happening
simultaneously.  Everything.  The entire process.

(2/21/12 Struhl Trial Tr. 237:12-24; *see also* 2/22/12 Struhl Trial Tr. 344:25-346:20.)

> **c.** **This evidence does not satisfy the Court's claim construction of "mixture" as a matter of law**

The Court's claim construction requires that "each of the steps of the method claim must be performed on fragments in a mixture."  (D.I. 158, 1/24/12 Memorandum Order at 1.)  Because "the clusters are themselves separate" as Dr. Struhl testified, and they are bound to the flow cell, they are not "in a mixture."  The fact that all of the clusters undergo amplification reactions simultaneously is irrelevant because the reactions are spatially separate from each other (not mixed).  The Court's construction requires a mixture of the fragments.  Without this element, the cluster generation products cannot infringe.

> **d.** **Cluster generation is not performed on "the fragments" of the mixture because the original fragments are washed away**

It is undisputed that the cluster generation products do not perform the claim steps on "the fragments" of the original mixture.  (2/22/12 Struhl Trial Tr. 307:8-312:8.)  The method of the asserted claims requires amplifying "a mixture of different sequence duplex DNA fragments."  (PTX 001, '023 patent, claim 12.)  The steps of the method are performed on "the fragments" of the original mixture or derivatives thereof (such as "the single fragment strands" that result when "the fragments" are denatured).  (*Id.*)

For example, the second step of the claimed method requires:  "denaturing **the fragments** to produce single fragment strands with linker regions at both strand ends."  (*Id.* (emphasis added).)  The last step of the claim requires "repeating said denaturing, hybridizing, and converting steps until a desired degree of amplification is achieved."  (*Id.*)

It is well established in patent law that use of "the" in patent claims refers back to the same element that appears earlier in the claim.  *E.g.*, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F. 3d 1342, 1348-49 (Fed. Cir. 2005).  For purposes of the '023 method, use of the term "the fragments" in the steps of the method refers back to the fragments in the preamble, i.e., the fragments of the original mixture.  (PTX 001, '023 patent, claim 12.)  Accordingly, each of the steps must be performed on "the fragments" from the original mixture, not new fragments.

LadaTech's expert, Dr. Struhl, agreed that "the fragments" from the original mixture in the Illumina method are washed away.  (2/22/12 Struhl Trial Tr. 307:8-312:8.)  Although the original fragments are loaded onto the flow cell, they are not tethered to the flow cell surface, and thus washed away after a complement is made on the surface.  (*Id.*)  Because the original fragments are all washed away, the cluster generation products cannot perform the claimed method.

## III.   THERE IS NO EVIDENCE OF INDIRECT INFRINGEMENT

LadaTech alleges that Illumina committed inducement and contributory infringement under 35 U.S.C. § 271(b) and (c) through its sale of the accused products to end customers.  "[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement."  *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F. 3d 1293, 1303 (Fed. Cir. 2006).  LadaTech has not proven liability under either subsection.

### A.   There Is No Evidence of Intent to Cause Infringement, Which Is a Prerequisite for Inducement and Contributory Infringement

LadaTech has failed to prove the intent element necessary for liability for inducement and contributory infringement.  As the Supreme Court recently made clear, liability for both inducement and contributory infringement require proof that the accused infringer (1) knew of the patent; and (2) knew that its products would be used in an infringing manner.  *Global-Tech*

*Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011) ("In *Aro II*, a majority held that a violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing,' and as we explain below, that conclusion compels this same knowledge for liability under § 271(b).") (internal citation omitted).

Although Illumina knew of the '023 patent, there is no evidence that Illumina knew its method infringes the asserted claims. Accordingly, the Court should enter judgment of no inducement or contributory infringement.

### B.   LadaTech Failed to Prove the Absence of Substantial Noninfringing Uses, Which Is a Prerequisite Under § 271(c)

LadaTech cannot prevail on contributory infringement because there is no evidence that the products lack "substantial, non-infringing uses." Section 271(c) specifically requires such:

> (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, **and not a staple article or commodity of commerce suitable for substantial noninfringing use**, shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (emphasis added). It is LadaTech's burden of proving the absence of "substantial noninfringing uses." *DSU Medical*, 471 F.3d at 1303 ("Thus, to prevail on contributory infringement, DSU must have shown that ITL made and sold the Platypus, that the Platypus has no substantial non-infringing uses in its closed-shell configuration, that ITL engaged in conduct (made sales) within the United States that contributed to another's direct infringement, and that JMS engaged in an act of direct infringement on those sales that ITL made in the United States.").

    **1.**       **LadaTech dropped its assertion of contributory infringement with respect to the cluster generation products**

There is no dispute that the cluster generation products have substantial, noninfringing uses, such as use with the noninfringing Nextera sample prep kits and third-party kits.  At the charge conference, LadaTech indicated that it is no longer asserting contributory infringement for the cluster generation products.  (Charge Conf. Tr. 860:15-19.)  The Court should enter judgment accordingly.

    **2.**       **Illumina's PCR-free protocol has substantial, noninfringing uses**

As discussed above, LadaTech conceded at the trial conference that Illumina's PCR-free protocol does not infringe because it does not perform the PCR steps of the claimed method (the denaturing, hybridizing, converting and repeating steps).  (2/24/12 Charge Conf. Tr. 897:22-898:8.)  As such, the PCR-free protocol is a noninfringing use.  LadaTech presented no evidence that this noninfringing alternative is insubstantial.  Without such evidence, the Court should enter judgment that Illumina does not commit contributory infringement through its sale of sample prep kits that have a PCR-free protocol (such as the TruSeq kits).

    **3.**       **The sample prep kits could be used on samples that do not have a "mixture of different sequence duplex DNA fragments"**

As discussed above, Illumina's customers could use its sample prep kits on clones of single fragment isolates (just as Saiki did), rather than on a mixture.  There is no evidence that this noninfringing alternative is insubstantial.  Without such evidence, the Court should enter judgment that Illumina does not commit contributory infringement.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should enter judgment as a matter of noninfringement.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

Of Counsel:

Jeffrey N. Costakos
Kimberly K. Dodd
Rebecca J. Pirozzolo-Mellowes
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI  53202-5306
(414) 271-2400

Ronald M. Wawrzyn
Wawrzyn LLC
233 S. Wacker Drive
Willis Tower, 84th Floor
Chicago, IL  60606
(312) 283-8330

Date:  February 27, 2012